**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BENJAMIN D. TARVER,**

**Plaintiff,**

**vs.**

**CASE NO. 6:26-cv-01328-AGM-NWH**

**LYFT FLORIDA, INC.,**

**Defendant.**
**______________________________/**

# DEFENDANT'S OPPOSED MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW

Defendant Lyft Florida, Inc. ("Lyft" or "Defendant"), by and through its undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.* (the "FAA"), respectfully moves to compel Plaintiff Benjamin D. Tarver ("Plaintiff") and stay this matter pending completion of arbitration of Plaintiff's claims against Lyft.[1] In support of this Motion, which Lyft requests to be considered on an expedited basis, Lyft states as follows:

---

[1]Defendant files this Motion rather than a responsive pleading to obviate waiving its right to compel arbitration and because, "[w]hile a pre-answer motion to compel arbitration and stay proceedings 'falls outside the ambit of those Rule 12(b) motions that suffice as responsive pleadings in lieu of answers[,] . . . federal courts have traditionally entertained certain types of pre-answer motions not specifically provided for in the Federal Rules of Civil Procedure[,] [including] motions to stay proceedings pending arbitration.'" *Armont v. K12*, No. 3:19-cv-00334-J-34MCR, 2019 U.S. Dist. LEXIS 238503, at *3 (M.D. Fla. Dec. 18, 2019) (*citing Smith v. Pay-Fone Sys., Inc.*, 627 F. Supp. 121, 122 (N.D. Ga. Aug. 9, 1985)). Defendant reserves its right to file a Rule 12 responsive pleading and assert all applicable defenses, including the class waiver, should the Court deny the motion.

## I. INTRODUCTION

Lyft's Terms of Service (the "Terms") contain a valid and enforceable arbitration provision requiring the parties to submit their disputes to binding arbitration. Plaintiff electronically accepted the Terms through the Lyft application on multiple occasions, most recently on February 28, 2026, and Lyft's records reflect that he did not timely opt out. But instead of submitting his claim to arbitration pursuant to the Agreement, Plaintiff filed this action before this Court asserting claims under the Fair Credit Reporting Act ("FCRA"). Because a valid arbitration agreement exists and Plaintiff's claims fall squarely within its scope, the Court should compel arbitration and stay this action pending completion of the arbitration proceedings.

## II. FACTUAL BACKGROUND

### A. Plaintiff is a Lyft Driver who Electronically Accepted Lyft's Terms of Service

Lyft operates a technology platform through which riders may be matched with drivers who provide rideshare services. *See* Exhibit A, Declaration of Jeannie Lieu ("Lieu Decl.") ¶ 4. Plaintiff alleges that Lyft Florida is a Florida corporation with its principal place of business in San Francisco, California. *See* [ECF No. 1] Compl. ¶ 5. Lyft Florida is a wholly owned subsidiary of Lyft, Inc., a Delaware corporation with its principal place of business in San Francisco, California, and therefore falls within the Terms' definition of "Lyft." Lieu Decl. ¶¶ 4, 16. Plaintiff alleges that he used Lyft's rideshare platform as a driver for approximately seven years. Compl. ¶ 9.

Lyft's records associate Plaintiff with a unique driver account and reflect that he electronically accepted Lyft's Terms of Service on multiple occasions. Lieu Decl. ¶¶ 5, 8-10, Ex. 1. Most recently, on February 28, 2026, Plaintiff accepted the version of the Terms last updated on February 9, 2026. *Id.* ¶¶ 9-10. A true and correct copy of the Terms he accepted is attached to the Declaration as Exhibit 1, and a true and correct copy of Plaintiff's Terms of Service Consent History ("TOS Consent History") is attached as Exhibit 2. *Id.*

### B. Lyft's Terms of Service Contain a Broad, Conspicuous, and Mandatory Arbitration Agreement that Users Must Accept Before Continuing to use the Lyft Platform

When Lyft publishes updated Terms, the Lyft application presents the Terms to the user. Lieu Decl. ¶ 6. The user must scroll through the Terms and affirmatively select "accept" before the user may proceed and continue using the Lyft platform. *Id.* ¶¶ 6-7. If the user does not accept the Terms, the user cannot move forward in the application or access the platform. *Id.* Lyft's system records each acceptance in a TOS Consent History, including the date and time of acceptance. *Id.* ¶ 8.

The Terms conspicuously advise users at the outset that Section 17 governs how claims between a user and Lyft may be brought and, with limited exceptions, requires binding and final arbitration on an individual basis. Lieu Decl. ¶ 11, Ex. 1 § 17. The Terms further state that, by entering into the Agreement and/or using or accessing the Lyft platform, the user accepts all of the Terms, including Section 17, and may not use or access the platform if the user does not agree to be bound. *Id.*

Section 17(a), titled "Agreement to Binding Arbitration Between You and Lyft," provides:

> YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION, as set forth below.

Lieu Decl. ¶ 11, Ex. 1 § 17(a). It further provides that, except for identified exceptions not applicable here, "ALL DISPUTES AND CLAIMS BETWEEN US . . .SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION." *Id.*

The Terms expressly identify the types of disputes covered by Section 17, including claims arising out of or relating to:

> the threatened or actual suspension, deactivation or termination of your User account or this Agreement, criminal background checks and driving history checks performed by or on Lyft's behalf, . . . claims arising under federal or state consumer protection laws; [and] claims arising under the . . . Fair Credit Reporting Act.

*Id.* ¶ 12, Ex. 1 § 17(a). Section 17 also delegates to the arbitrator disputes concerning the scope, applicability, enforceability, revocability, or validity of the arbitration agreement, except as otherwise expressly provided. *Id.* ¶ 13.

Drivers may opt out of arbitration for certain Driver Claims only by complying with the procedure set forth in Section 17(l), which requires a dated and signed written notice to be submitted to the designated email address within 30 days of accepting the Terms. *Id.* ¶ 14, Ex. 1 § 17(l). Lyft searched its records and confirmed that Plaintiff did not submit an arbitration opt-out in accordance with that provision. *Id.* ¶ 15.

### C. Plaintiff Filed this Action Despite His Agreement to Arbitrate His Claims

On June 17, 2026, Plaintiff filed this action under the FCRA. He alleges that Lyft relied on a driving-history report obtained from Safety Holdings Inc. and restricted or deactivated his driver account without first providing him a copy of the report, a summary of his rights, or an opportunity to dispute the information. Compl. ¶¶ 9-22. Count I alleges a violation of 15 U.S.C. § 1681b(b)(3)(A) and Count II alleges willful noncompliance under 15 U.S.C. § 1681n. Compl. ¶¶ 23-35. Plaintiff seeks $22,500 in damages, costs, and other relief. Compl. at 6.

Before filing this Motion, Lyft Florida conferred with Plaintiff regarding arbitration. Plaintiff declined to submit his claims to arbitration and advised that he disputes formation, assent, opt-out, enforceability, and scope. Lyft's account-specific records and supporting Declaration establish that Plaintiff repeatedly accepted the Terms, including on February 28, 2026, and did not opt out. The Court should therefore enforce the Agreement and submit Plaintiff's claim to arbitration.

## III. ARGUMENT

Pursuant to the FAA, in a contract for a transaction involving interstate commerce, a written provision requiring arbitration for claims or controversies arising out of the contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party to a contract with an arbitration agreement may move the court to compel arbitration, and the court must compel arbitration if the parties contractually

agreed to arbitrate the claims at issue. *See id.* § 4. At the request of one of the parties bound to arbitrate, the court must also stay the proceedings pending resolution of the arbitration. *See id.* § 3. Specifically, the FAA requires a court to compel arbitration "upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4). At the request of a party, the Court must also stay the action pending resolution of the arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024).

### A. The Transaction between Lyft and Plaintiff involves interstate commerce, and the FAA Applies

The FAA applies to written arbitration provisions in contracts involving interstate commerce. 9 U.S.C. § 2; *Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014). The transaction here readily satisfies that requirement. Plaintiff is a Florida resident. Compl. ¶ 4. Plaintiff alleges that Lyft Florida is a Florida corporation with its principal place of business in San Francisco, California. *Id.* ¶ 5. Lyft Florida is a wholly owned subsidiary of Lyft, Inc., a Delaware corporation with its principal place of business in San Francisco, California. Lieu Decl. ¶¶ 4, 16. The Lyft platform operates through an Internet-based application, transmits information electronically, and connects users through a nationwide technology platform. Lieu Decl. ¶ 4. Accordingly, the FAA applies.

### B. A Valid and Enforceable Arbitration Agreement Exists Between Lyft and Plaintiff

A valid and enforceable arbitration agreement exists between Lyft and Plaintiff. Arbitration agreements are contracts, and ordinary state-law principles govern whether the parties formed an agreement. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Florida law, mutual assent may be manifested through conduct, including electronic acceptance. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368-69 (11th Cir. 2005); *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018). Although the FAA requires a written agreement to arbitrate, it does not require the agreement to bear a handwritten signature. *Caley*, 428 F.3d at 1368; *see also Fi-Evergreen Woods, LLC v. Robinson*, 135 So. 3d 331, 335 (Fla. 5th DCA 2013) ("A failure to sign an arbitration agreement does not automatically render the agreement invalid."). Florida and federal courts likewise recognize clickwrap agreements as valid and enforceable where a uses where the user is presented with the terms and affirmatively accepts them. *See Segal v. Amazon.com*, *Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (finding forum-selection clause "contained within a so-called 'clickwrap agreement,' where a user accepts a website's terms and conditions [by clicking 'I agree']," valid and enforceable); *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) ("In Florida and the federal circuits . . . clickwrap agreements are valid and enforceable contracts.").

Lyft's evidence establishes that Plaintiff electronically accepted the Terms. When Lyft presents new or updated Terms through the application, the user must scroll through them and affirmatively select "accept" before continuing to use the

platform. Lieu Decl. ¶¶ 6-8. Lyft's system records each acceptance in the user's TOS Consent History, including the applicable version and date and time of acceptance. *Id*. ¶ 8. Plaintiff's account-specific records reflect that he accepted Lyft's Terms on multiple occasions, most recently on February 28, 2026, when he accepted the version last updated on February 9, 2026. *Id*. ¶¶ 9-10, Ex(s). 1-2.

The Terms conspicuously advise users that Section 17 requires binding arbitration and that a user who does not agree to the Terms may not use or access the Lyft platform. *Id*. ¶ 11, Ex. 1. Plaintiff could not proceed through the application without affirmatively accepting the Terms. *Id*. ¶¶ 6-7. His electronic acceptance therefore manifested assent to the arbitration agreement.

Lyft's evidence further establishes that Plaintiff did not opt out. Section 17(l) provides a specific procedure and deadline for opting out of arbitration for certain Driver Claims. *Id*. ¶ 14, Ex. 1 § 17(l). Lyft searched the records maintained for arbitration opt-outs using the identifying information associated with Plaintiff's account and found no opt-out submitted by him. *Id*. ¶ 15. Plaintiff is therefore bound by the arbitration agreement.

### C. Plaintiff's FCRA Claims Fall Squarely Within the Broad Scope of the Arbitration

The FAA provides a federal "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 414 (2022). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver,

delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Accordingly, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and that presumption is particularly applicable where, as here, the arbitration clause is broad. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

The arbitration agreement covers "ALL DISPUTES AND CLAIMS" between Plaintiff and Lyft, including disputes based on past, present, or future events arising out of or relating to the parties' agreement, the Lyft platform, Plaintiff's relationship with Lyft, the suspension or deactivation of his driver account, driving-history checks performed by or on Lyft's behalf, and the FCRA. Lieu Decl. ¶ 12, Ex. 1 § 17(a). Plaintiff's Complaint alleges precisely those matters: that Lyft restricted his driver account based on a driving-history report and, in doing so, violated the FCRA. Compl. ¶¶ 9-35. Those allegations clearly "touch matters" covered by the arbitration agreement and therefore must be arbitrated irrespective of how the claims are labeled. *See In re Managed Care Litig.*, No. 00-MD-1334, 2003 WL 22410373, at *3 (S.D. Fla. Sept. 15, 2003) ("If Providers' allegations 'touch matters' covered by the relevant arbitration agreements, then those claims must be arbitrated, irrespective of how the allegations are labeled."), *aff'd sub nom. by Klay v. All Defs.*, 389 F.3d 1191 (11th Cir. 2004).

### D. The Court Should Compel Arbitration and Stay this Action

Because a valid arbitration agreement exists and Plaintiff's claims fall within its scope, the Court must compel arbitration. *See* 9 U.S.C. §§ 3-4. Section 3 of the Terms further requires the Court to stay this action upon Lyft Florida's request while arbitration proceeds. *Smith*, 601 U.S. at 475-78.

## IV. CONCLUSION

For the foregoing reasons, Lyft respectfully requests that the Court enter an order compelling Plaintiff to submit the claims asserted in the Complaint to binding arbitration in accordance with Section 17 of the Lyft Terms of Service, staying this action pending completion of arbitration, and granting such further relief as the Court deems appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

In compliance with Local Rule 3.01(g), counsel for Lyft conferred with Plaintiff, who is proceeding pro se, via email on July 16, 21, and 28, and August 5, 2026, regarding the relief requested in this Motion. Plaintiff does not agree to submit his claims to arbitration or stay this action and opposes the relief sought in this Motion.

## Certification Under Penalty of Perjury That Artificial Intelligence Was Not Used in the Preparation of This Filing

I have reviewed the Standing Order Requiring Disclosure of the use of artificial intelligence. After diligent inquiry and under penalty of perjury, I certify that artificial intelligence was not utilized in the preparation of this filing in any way. I understand that, whether I represent myself or I am an attorney representing a client, I have an

affirmative obligation to read each case cited in this filing. If I fail to do so and a case upon which I rely does not exist or does not reasonably stand for the cited proposition, I understand that the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

DATED this 7th day of August 2026.

**JACKSON LEWIS P.C.**

*/s/ Brandon U. Campbell*
**LEAD TRIAL COUNSEL**
Brandon U. Campbell
Florida Bar Number: 112853
brandon.campbell@jacksonlewis.com
jillian.sotomayor@jacksonlewis.com
orlandodocket@jacksonlewis.com

**David J. Awoleke**
Florida Bar Number: 1010174
david.awoleke@jacksonlewis.com
maya.levy@jacksonlewis.com
tampadocketing@jacksonlewis.com

100 S. Ashley Drive, Suite 2200
Tampa, Florida 33602
Telephone: 813-512-3210
Facsimile: 813-512-3211

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of August, 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system to all counsel of record listed below:

Benjamin D. Tarver, Esq.
450 South Orange Ave, 3rd Floor
Orlando, FL 32801
T: 407-308-2968
E: litigation@civilfilings.com

*/s/ Brandon U. Campbell*

4914-9684-1154, v. 4